BILAL A. ESSAYLI
Acting United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
WILLIAM KANELLIS (Cal. Bar No. Pending)
LLOYD MASSON (Cal. Bar No. 270182)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6947/8455
    Facsimile: (213) 894-0141
    Email:    william.kanellis@usdoj.gov
            Lloyd.masson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00656-AB |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE SELF-DEFENSE ARGUMENTS; EXHIBIT 1 |
| v. | |
| ERIN PETRA ESCOBAR and NICK ELIAS GUTIERREZ, | Trial Date: March 30, 2026<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom of the Hon. Andre Birotte |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys William Kanellis and Lloyd Masson, hereby submits this motion in limine to preclude defendants from raising a self-defense theory at trial.

The parties have conferred regarding the substance of this motion. ERIN ESCOBAR's and NICK GUTIERREZ's counsel have indicated that they oppose this motion.

1    This motion is based upon the attached memorandum of points and
2 authorities, the surveillance video attached as Exhibit 1[1], the files
3 and records in this case, and such further evidence and argument as
4 the Court may permit.

5  Dated: March 11, 2026              Respectfully submitted,

6                                     TODD BLANCHE
                                      Deputy Attorney General
7
                                      BILAL A. ESSAYLI
8                                     First Assistant United States
                                      Attorney
9
                                      ALEXANDER B. SCHWAB
10                                    Assistant United States Attorney
                                      Acting Chief, Criminal Division
11

12             /s/
                                      WILLIAM KANELLIS
13                                    LLOYD MASSON
                                      Assistant United States Attorneys
14
                                      Attorneys for Plaintiff
15                                    UNITED STATES OF AMERICA

---

[1] Because of its size, Exhibit 1 has been loaded onto a flash drive, which will be hand-delivered to the Court.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On July 17, 2025, defendants ERIN ESCOBAR and NICK GUTIERREZ forcibly assaulted Federal Protective Service (FPS) inspectors while they were performing their official duties around the Roybal Federal building (Roybal).  Counts One and Two of the Indictment charged ESCOBAR and GUTIERREZ, respectively, with assault on a Federal official, in violation of 18 U.S.C. § 111(a).  Count Three charged GUTIERREZ with violating sections 111(a) and (b) of the statute because he inflicted bodily injury upon another FPS inspector.

The United States anticipates that at trial, the defendants may attempt to raise an affirmative defense of self defense to these charges.  They should be precluded from doing so.  For either defendant to argue self-defense, they must first show that they (1) reasonably believed that the use of force was necessary to defend themselves against the immediate use of unlawful force, and (2) used no more force than reasonably necessary in the circumstances.  See Ninth Circuit Model Crim. Jury Instruction No. 8.3 (2022 ed.).  Neither defendant has proffered such proof with respect to any of the charged counts, and the facts do not support it.  Accordingly, this Court should preclude the defendants from arguing that they acted in self-defense, including in voir dire and opening statements.

**II.   FACTUAL BACKGROUND**

Evidence shows that the assaults underlying Counts One, Two and Three were unprovoked and initiated by GUTIERREZ and ESCOBAR.

Surveillance video makes evident, and witnesses will testify at trial, that ESCOBAR was defacing parking barriers at the entrance to

1  Roybal in violation of 18 U.S.C. § 1361. See United States v.
2  Kincade, 379 F.3d 813, 846 (9th Cir. 2004) ("spray painting graffiti
3  on a government building" violates section 1361).
4      Exhibit 1 shows that, after she defaced the Federal property,
5  ESCOBAR crossed to a tent on the opposite side of the street.  FPS
6  inspectors, including B.M., followed ESCOBAR across the street to
7  detain her.  These FPS inspectors were dressed in FPS uniforms and
8  were equipped with law enforcement protective gear and weapons,
9  including bullet proof vests, tasers, and side-arms.
10     As FPS inspectors approached ESCOBAR, GUTIERREZ, who minutes
11 before had stood near ESCOBAR as she defaced Roybal's parking gate,
12 put down his bullhorn and rushed toward FPS inspector B.M.  GUTIERREZ
13 attempted to grab the shoulder straps of FPS inspector B.M.'s
14 bulletproof vest, blocking him from ESCOBAR.
15     Seeing GUTIERREZ's assault of FPS inspector B.M., other FPS
16 inspectors ran to his aid and attempted to subdue GUTIERREZ.  During
17 the ensuing scuffle, GUTIERREZ fell onto the ground.  Surveillance
18 video shows – and witnesses will testify – that GUTIERREZ resisted
19 FPS efforts to subdue him and wildly kicked his legs.  At one point,
20 GUTIEREZ kicked FPS inspector R.S. in the chest.  The force of this
21 kick caused FPS inspector R.S. to fall backwards onto his hand, and
22 severely dislocate his ring finger.
23     The third assault happened after FPS inspectors had subdued and
24 detained ESCOBAR.  Surveillance video shows two FPS inspectors
25 escorting ESCOBAR towards the holding cell at 300 N. Los Angeles Street.
26 Witnesses will testify that, while FPS Inspectors were transporting
27
28                                 2

ESCOBAR, she audibly filled her throat with saliva and spit in the face of FPS inspector C.C.

As discussed below, FPS's actions that day were reasonable and lawful, and supply no basis for a self-defense argument.

## III. ARGUMENT

### A. Legal Standard

#### (1) Self Defense Claims Are Limited

Where a Federal law enforcement official is involved, a defendant may offer an affirmative defense of self-defense only under a "narrow range of circumstances." United States v. Acosta-Sierra, 690 F.3d 1111, 1126 (9th Cir. 2012). To invoke this defense, a defendant must first offer evidence to show "'(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances.'" Id. (quoting United States v. Urena, 659 F.3d 903, 907 (9th Cir. 2011)).

These criteria should be viewed within the context of the Ninth Circuit's admonition that, "an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault." Acosta-Sierra, 690 F.3d at 1126 (citation omitted). Together, these precedents teach that, if GUTIERREZ and/or ESCOBAR initiated the assault on FPS inspectors, they may not justify their conduct by claiming that it was done in self defense.

Ninth Circuit Model Instruction 8.3 sets forth two potential self-defense theories to assault on a Federal official. The first is that the defendant did not know the victim was a federal officer. Ninth Circuit Model Crim. Jury Instructions, No. 8.3 (2022 ed.).

3

This is not a plausible defense in this case, given that all FPS inspectors involved in detaining ESCOBAR and GUTIERREZ were in FPS uniforms and protective gear.  The second self-defense theory is that "the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force[.]"  Id.  This defense is also implausible here, as both ESCOBAR and GUTIERREZ knew that FPS inspectors were lawfully attempting to detain ESCOBAR for defacing Federal property.

(2) Defendants Must First Make A *Prima Facie* Case

Before a defendant may present a self-defense theory to the jury, he must present to the Court a prima facie showing that there is sufficient evidence for a jury to sustain the defense.  While this prima facie burden is not high, a defendant must still offer "evidence upon which the jury could rationally sustain the defense." United States v. Houston, 648 F.3d 806, 816 (9th Cir. 2011); United States v. Jackson, 726 F.2d 1466, 1468 (9th Cir. 1992).  A "mere[] scintilla" of evidence will not be sufficient to warrant the instruction.  United States v. Hurtado-Enriquez, 1998 WL 152743 at *1 (9th Cir. 1998) (quoting Jackson, id.).

"If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." United States v. Cramer, 532 F. App'x 789, 791 (9th Cir. 2013) (upholding order excluding self-defense theory at trial when defense proffer was insufficient to meet elements as matter of law); see also United States v. Biggs, 441 F.3d 1069, 1071 (9th Cir. 2006) (defendant must proffer elements of self-defense before trial).  As the Supreme Court

4

has opined, requiring this threshold prima facie case for each element of an affirmative defense effectively guards against "wasting valuable trial resources." United States v. Bailey, 444 U.S. 394, 417 (1980).

### B. Defendants Cannot Make a Prima Facie Case for Self-Defense

In this case, neither defendant can make this prima-facie showing – i.e., that they reasonably believed force was necessary to defend against the immediate use of unlawful force.

First, the FPS conduct in this case was entirely and apparently lawful. With respect to ESCOBAR's assault in Count One, FPS inspectors, dressed in uniforms, detained ESCOBAR for defacing Federal property. Surveillance video shows two FPS inspectors carrying ESCOBAR by the arms to the holding facility as she applied her weight to slow their movement. These FPS inspectors were acting entirely within the scope of their legal authority when ESCOBAR intentionally spit in the face of FPS inspector C.C. Spitting is not a self-defense measure; to the contrary, it is a paradigmatic violation of section 111(a). See United States v. Stoddard, 407 F. App'x 231, 234 (9th Cir. 2011) ("Spitting . . . involves the type of non-injurious physical contact contemplated by § 111(a)'s felony provision"). Since these uniformed FPS inspectors were obviously acting within the scope of their authority, no self-defense instruction is warranted. See United States v. Johnson, 480 Fed. App'x. 437, 438-39 (9th Cir. 2012) (affirming trial court's refusal to permit a self-defense instruction where circumstances made evident that plain-clothed FBI agents were Federal officers).

5

Regarding GUTIERREZ's assault underlying Count Two, surveillance video shows that GUTIERREZ voluntarily set down his megaphone and, unprovoked, rushed to thwart FPS inspector B.M.'s effort to detain ESCOBAR.  No government employee had even approached GUTIERREZ, or otherwise given him any justification to interfere with FPS's effort to detain ESCOBAR. Surveillance video shows GUTIERREZ standing next to ESCOBAR as ESCOBAR defaced Federal property, so GUTIERREZ plainly knew that these uniformed FPS inspectors were engaged in their official duties when seeking to detain ESCOBAR.  Nothing about FPS's attempt to detain ESCOBAR was unlawful, and GUTTIEREZ otherwise has no basis to claim his interference with FPS's efforts were in self defense.  See Hurtado-Enriquez, 1998 WL 152743 at *1 (affirming denial of self-defense instruction where Federal officers were "wearing their uniforms with the standard badges and agency insignia [during] their altercation with [defendant]").

As for the assault underlying Count Three, surveillance video shows uniformed FPS inspectors lawfully attempting to subdue GUTIERREZ after he assaulted FPS inspector B.M.  See United States v. McNeal, 765 F. App'x 193, 194 (9th Cir. 2019) (defendant "foreclosed from presenting a theory of self-defense because he preemptively attacked").  Evidence shows GUTIERREZ wildly kicking his legs while FPS inspectors attempted to restrain him.  All FPS conduct in this case was an apparent, lawful exercise of FPS authority by uniformed FPS inspectors, and a reasonable response to defendants' aggression. McNeal, 765 F. App'x at 194; cf. United States v. Morton, 999 F.2d 435, 438 (9th Cir. 1993) (self defense instruction may be warranted where "a federal agent has failed to identify herself prior to the

6

assault, and her <u>identity or authority was not otherwise apparent</u>") (emphasis added). GUTIERREZ initiated the assault against an FPS inspector and resisted a lawful arrest by uniformed FPS inspectors. No self-defense instruction is warranted for Count Three. <u>Hurtado-Enriquez</u>, 1998 WL 152743 at *1; <u>Acosta-Sierra</u>, 690 F.3d at 1126.

Finally, a separate reason exists for excluding this defense: allowing a self-defense theory to be presented to the jury in these circumstances could mislead the jury and waste judicial resources. The <u>prima-facie</u> requirement that a defendant explain to the Court how each element of the defense would be met exists precisely to prevent such misuse of trial time. <u>Bailey</u>, 444 U.S. at 417. Where the undisputed evidence shows that a defendant was the aggressor, and reflects uniformed Federal employees engaged in the exercise of their official duties, no reasonable jury could find that these defendants acted in lawful defense of themselves.

## IV. CONCLUSION

None of the three assaults on Federal officers in this case permit the introduction of an argument of self defense. The surveillance video in this case shows that GUTIERREZ initiated the events underlying Counts Two and Three, voluntarily rushing toward FPS inspectors to interfere with their attempt to detain ESCOBAR, and then resisting their efforts to subdue him and kicking. ESCOBAR spit in the face of one of two FPS inspectors escorting her to a holding cell. Accordingly, the United States respectfully requests that the Court preclude defendants from arguing or presenting argument or evidence of self-defense at trial.

7

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the United States of America, certifies that this brief contains 1779 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 11, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

          /s/
WILLIAM KANELLIS
LLOYD MASSON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

8